[Civ. No. 6481. Second Appellate District, Division One.—July 30, 1931.]

MARY LOIS DWYER et al., Appellants, v. LOS AN-GELES RAILWAY CORPORATION (a Corporation), Respondent.

Ed. Fitzpatrick and Culver & Nourse for Appellants.

Gibson, Dunn & Crutcher and Penn Cummings for Respondent.

CONREY, P. J.—Plaintiff Mrs. Dwyer was injured by collision with a street-car of respondent under circumstances which may be described in general terms as follows: At the corner of Seventh and Mateo Streets, in the city of Los Angeles, the route of travel for the street-cars of respondent makes a turn whereby north-bound cars on Mateo Street, when they reach said intersection, turn to the left and then travel westward on Seventh Street. From this it results that persons intending to travel westward on Seventh Street as passengers on respondent's cars are required to enter the cars at their stopping point at the southeast corner of the intersection, and at or near the point where the cars make their left turn. At the time of the accident in which Mrs. Dwyer (hereinafter called appellant) was injured, there were two lines of cars, one designated J cars and the other designated R cars (according to their respective routings), which regularly came to this intersection from the south. On the occasion of this accident appellant had come to this corner for the purpose of becoming a passenger on a J car. The principal place of entry for passengers on these cars was at the rear end of the car, where the conductor has his principal station, but there is also a door at the front. For the purpose of more rapid disposal of the movement of the passengers seeking to enter these cars during busy hours, respondent at such times kept at this corner an employee of the description commonly known as a "loader". It seems to be the particular business of this loader to stand near the front door of the car, at the place where the car stops, and there receive the fares of passengers who are then permitted to enter by the front door.

At the particular time of the accident in question, an R car had stopped at the intersection, and the loader was standing near by, receiving fares. At the same time the

J car, upon which appellant intended to become a passenger was approaching from the south, but was distant "a block or so", probably less than the entire block, from the point where the R car had stopped. While the traffic situation was in the condition thus described, appellant stepped out to a place near the R car and near to the loader, for the purpose of handing to him her fare so that she would be ready to step into the J car upon its arrival. Manifestly this could not take place until the R car had moved forward on its way around the corner into Seventh Street. At this instant the R car did move forward and in so moving the rear end of the car swung out to the east. In so doing the side of the car, aptly described as the "rear overhang" thereof, struck appellant and knocked her down upon the street, and thereby caused the injuries of which she complains. The case went to trial on the second amended complaint and respondent's answer thereto. In said complaint it was alleged that at the stated time and place the plaintiff "was holding herself in readiness and was about to become a passenger on one of defendant's street cars; that at that time and place the defendant carelessly, negligently and recklessly managed and operated one of its said street cars, and as a result", etc. Defendant in its answer denied that the plaintiff was holding herself in readiness or was about to become a passenger and denied the allegations of negligence. Defendant also pleaded contributory negligence of the plaintiff. The judgment from which the plaintiff appeals was entered in accordance with the jury's verdict in favor of defendant.

The evidence shows without dispute that appellant was not, and was not intending to be, a passenger on the car which hit her. There is no evidence of negligence in the operating of said car by either the conductor or motorman thereof unless the mere happening of the accident would be such evidence. If there was any negligence with which respondent could be chargeable (unless with the exception above noted), it must have been negligence of the employee called the loader, and this must have consisted in his failure to perform some duty which his position imposed upon him with respect to appellant. If his duties were such that he was under obligation to look

out for intending passengers and see that they did not stand too close to the cars as they swung out at the curb, and if he failed to use reasonable care in respect to that duty, and if as a result of such failure injury occurred to the intending passenger, then respondent would be chargeable with negligence in the transaction, and the jury was, in effect, so instructed. Appellant testified that she was employed in that neighborhood and had been taking this same car regularly for nearly a year before the accident; that she was watching the street-car before she got out into the street, and that she knew that the rear overhang of the street-car would jut out as it would go around the curve. This was evidence directly tending to support the plea of contributory negligence of the plaintiff in standing too near to the car. Without reviewing the evidence at length, it will suffice to say that the evidence is sufficient to support the verdict of the jury. If there is any reason for reversing the judgment, such reason or ground must be found in some error in the rulings of the court, or in its instructions to the jury. This brings us to the principal points relied upon in support of the appeal.

 Appellant's first point is that the court erred in sustaining defendant's demurrer to the amended complaint preceding the filing of the second amended complaint. The amended complaint in its first count was substantially like the second amended complaint in that it proceeded upon the theory that the plaintiff was a passenger of the defendant, whereas the second count alleged the same facts of negligence, but omitted any statement concerning plaintiff's situation as a passenger. Assuming that the court erred in sustaining the demurrer to the amended complaint, it is sufficient to note that plaintiffs' case was presented to the jury on both theories, and the jury was instructed not only concerning respondent's duty to appellant as a passenger, if they should find she was a passenger, but also instructed concerning the rule of negligence applicable to the case if appellant was not a passenger at the time of the accident. Therefore the error was not prejudicial in its effect.

Next we have a group of points relied upon by appellant, concerned with the doctrine known as *"res ipsa*

*loquitur*". The court in reading its instructions to the jury told them, among other things, that if they should find from the evidence that the relation of carrier and passenger existed between appellant and respondent at the time of the accident "and that Mrs. Dwyer was injured by the operation of one of the defendant's cars while such relationship existed the burden is cast upon the defendant to explain the manner in which the accident happened, that is, to show that the injury was occasioned by an inevitable casualty or some other cause which common care or foresight could not prevent or by the contributory negligence of the plaintiff herself". The court took an overnight recess before completing the announcement of its instructions to the jury, and after the recess withdrew the instruction last above ˙mentioned. In that connection the court then said to the jury: "You are instructed that the doctrine of *res ipsa loquitur* does not apply to this case. *Res ipsa loquitur* means, 'the thing speaks for itself'; and where applicable it would be sufficient for the plaintiff to show by a preponderance of the evidence the relationship of passenger and carrier and the injury to plaintiff while a passenger. In such case an inference of negligence on the part of the defendant would arise and defendant would be required to meet this inference. But here the plaintiff pleaded and offered proof as to the manner in which defendant was alleged to be negligent, therefore the doctrine of *res ipsa loquitur* cannot apply. Therefore, unless you find from the evidence that defendant's negligence was the sole proximate cause of injury to the plaintiff, your verdict should be for the defendant. If you find from the evidence that defendant's negligence was the proximate cause of injury to the plaintiff and the plaintiff was not guilty of contributory negligence, your verdict shall be for the plaintiff. Therefore the following instruction heretofore read to you is withdrawn, cancelled and obliterated, and you are to disregard it entirely as though you had never heard it: (quoting the cancelled instruction)."

I think that the record does not satisfactorily support the suggestion made by the trial court in its later instruction that the stated doctrine did not apply to the case because the plaintiff pleaded and offered proof of the man-

ner in which the defendant was alleged to be negligent. (*Seney* v. *Pickwick Stages,* 82 Cal. App. 226, 229 [255 Pac. 279].) But this does not settle the question. We still have to consider whether (assuming that the relation of carrier and passenger existed) the mere happening of the accident and injury was sufficient to raise an inference of negligence on the part of the defendant. The precise question before us does not appear to have been determined in this state, in relation to passengers preparing to enter street-cars, although the rule as between street railways and pedestrians in general has been settled. In *Wood* v. *Los Angeles Ry. Corp.,* 172 Cal. 15 [155 Pac. 68], the court quoted with approval a decision wherein the Supreme Court of Kentucky (*Louisville Ry. Co.* v. *Ray,* (Ky.) 124 S. W. 313) said that, although it is the duty of those in charge of a street-car to keep a lookout so as to avoid injuring those who may be crossing or upon the street in front of the moving car, this rule has never been so extended as to require the employees in charge of the car to keep a lookout at corners and curves so as to prevent others using the street from colliding with the rear end of the car. But the plaintiff in the Wood case was not a passenger, and the question whether the same rule would apply as against a passenger was not suggested. In a note found in Annotated Cases 1916E, page 680, a number of decisions are cited to the effect that the rule that a street railway company is under no duty to keep a lookout to prevent persons from coming in contact with the rear end of a car rounding a curve applies to those leaving a car and to those intending to become passengers. In *Miller* v. *Public Service R. Co.,* 86 N. J. L. 631 [L. R. A. 1915C, 605, 92 Atl. 343], the court said: "The rule approved by the weight of authority is that, in view of the well-known fact that in rounding a curve the rear end of a street car will swing beyond the track, and overlap the street to a greater extent than the front, the motorman may rightfully assume that an adult person, standing near the track, who is apparently able to see, hear, and move, and having notice of the approach of a street car, and of the existence of the curve, will draw back far enough to avoid being struck by the rear of the car as it swings around the curve in the usual and expected man-

ner, and therefore no legal duty is imposed upon the motorman to warn such a person against the possible danger of a collision with the rear, because of the swing, if he remains in the same position." (Citing authorities.)

I think that the foregoing is a correct statement of the law as applied to the duties of a motorman. I see no reason why the same rule should not apply with respect to the duties of an employee stationed on the street for the mere purpose of receiving fares and permitting passengers to enter the cars after the fares have been paid. In this case there is no direct evidence that the so-called "loader" had any other duty. It may be assumed that if there had been evidence tending to prove that the so-called loader saw that the plaintiff was standing in a position where the car in its turning would hit her, and if, so seeing, he had failed to use reasonable care to give the plaintiff warning of her danger, the defendant would have been · chargeable with his negligence in that particular. But this would be direct evidence of negligence and would not come within the scope of the rule of *res ipsa loquitur*. I am of the opinion that there was no error in the instructions of the court upon the subject here in question. The evidence fails to show even the general fact that the accident was caused by some fault in the operation of the car. In a somewhat analogous case in respect to the condition of the evidence, it was held that the court erred in giving an instruction which applied the *res ipsa loquitur* rule to the case. (*Ginochio* v. *San Francisco,* 57 Cal. App. 150 [206 Pac. 763].)

We have examined the additional criticisms made by appellant to certain instructions to the jury and find that no prejudicial error in said instructions has been shown. We are further of the opinion that the point that there was a conflict between two of the instructions is not well taken; and that the instruction beginning at line 20, page 111, reporter's transcript, fully and fairly states the conditions under which the plaintiff would be entitled to recover if the jury should find that the relation of carrier and passenger existed. Other instructions properly stated the rule of negligence applicable to the case if the relation of passenger and carrier did not exist.

The judgment is affirmed.

HOUSER, J., Concurring.—I concur.

Although I am in accord with the judgment indicated in the opinion prepared and signed by Presiding Justice Conrey, reasoning from the authorities and general principles applicable to the facts of the case, I am unable to unreservedly subscribe to the "ratiocination" by which he is led to his conclusion.

Since it is possible that within the admitted facts of this case the jury might have determined that at the time when plaintiff sustained the injury of which she here complains she was a passenger of the defendant (*Hart* v. *Fresno Traction Co.*, 175 Cal. 489 [167 Pac. 885]; *Nilson* v. *Oakland Traction Co.*, 10 Cal. App. 103 [101 Pac. 413]), and assuming that such a conclusion had been so reached, inevitably it would follow that plaintiff was then entitled to such care on the part of the defendant to prevent her from being injured as is ordinarily legally required of a carrier toward its passengers. In other words, according to the statutory provisions of this state (sec. 2100, Civ. Code) the carrier was obliged to use the "*utmost* care and diligence" for the safe carriage of the passenger. In that connection, if after having reached the conclusion that as between plaintiff and the defendant the relationship of carrier and passenger existed, in the absence of any showing that the accident occurred by reason of inevitable casualty or some other cause which human care and foresight could not have prevented; or by the contributory negligence of plaintiff, it then became the further duty of the jury to determine whether "the *utmost* care and diligence" for the safe carriage of plaintiff had been exercised by the defendant, which duty necessarily included a consideration by the jury not only of the particular acts and conduct shown to have been performed by the motorman, the conductor, or the loader of the car of the defendant, but as well what particular act or thing (if any) omitted to be done by them, or by either of them, reasonably might have been performed by them or either of them, which would have constituted a compliance by the defendant with the statutory requirement that it use the *utmost* care and diligence to see that plaintiff sustained no injury during the time that the relationship of pas-

senger and carrier existed between plaintiff and the defendant.

As is succinctly stated in 4 Cal. Jur. 980, where many authorities are cited in its support:

"It has been long and continuously settled that, in an action by a passenger against a carrier for injuries received a *prima facie* case is established when the plaintiff shows that he was injured while being carried as a passenger by the defendant, and that the injury was caused by the manner in which the defendant used or directed some agency or instrumentality under its control. This rule has been announced by the cases again and again. The occurrence of the accident raises a presumption of negligence which throws upon the carrier the burden of showing that the injury was sustained without any negligence on its part; that is, that the injury was occasioned by inevitable casualty or some other cause which human care and foresight could not prevent or by contributory negligence of the plaintiff, unless the proof on the part of the plaintiff himself tends to show that the injury was occasioned by one of these causes. *This rule is known as the doctrine of res ipsa loquitur.*"

Relying upon the accuracy of the foregoing statement of the law, to my mind it would seem inescapable that plaintiff was entitled to have given to the jury the instruction which was requested by her but refused by the trial court, and to which attention has been directed by Presiding Justice Conrey.

Neither "inevitable casualty" nor any cause "which human care and foresight could not prevent" was attempted to be shown by the defendant. For aught that appears, the *"utmost* care and diligence" required by the carrier for the safe carriage of the passenger was not exercised by the defendant. From which it would follow that at least a *prima facie* case of plain neglect of duty on the part of the defendant had been established, and that in the absence of a showing from the entire evidence in the case that plaintiff had been guilty of contributory negligence, she would be entitled to be compensated by a judgment for whatever damages she sustained.

Considering such evidence as is set forth in the opinion of Presiding Justice Conrey, it unquestionably appears

that for a long time preceding the happening of the accident plaintiff was most familiar with the entire situation; that is to say, she habitually boarded a street-car at the place where the accident occurred; she knew that in following its regular route the R car turned the corner at that point, and that in so doing its rear end or "overhang" necessarily projected into the street considerably farther than it did when the car was not so engaged, and that if she maintained a position within the range of the "overhang", necessarily she would come into collision with the car, from which happening an injury might result to her. Nevertheless, with such knowledge on her part, at least partly because of the fact that she neglected to protect herself from being injured, the accident of which she here complains occurred. To my mind, it shows a clear case of contributory negligence on the part of plaintiff, which has the legal effect of precluding the recovery of a judgment for damages against the defendant. (*Townsend* v. *Houston Elec. Co.*, (Tex. Civ. App.) 154 S. W. 629.)

My ultimate conclusion is that although error was committed by the trial court in its refusal to give to the jury the instruction to which attention has been directed, because of the fact that such error did not result in a miscarriage of justice, the judgment should be affirmed. (Sec. 4½, art. VI, Const.)

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 27, 1931.